UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

TJC's Transportation Solutions Ltd.,

                Plaintiff,

                                              Civ. No. 09-2810 (RHK/AJB)
                                              **MEMORANDUM OPINION**
                                              **AND ORDER**

v.

Rivard Companies, Inc. d/b/a Central
Wood Products,

                Defendant.

Shushanie E. Kindseth, Hinshaw & Culbertson LLP, Minneapolis, Minnesota, Kurt A. Leifheit, Daniel L. Farris, Hinshaw & Culbertson LLP, Chicago, Illinois, for Plaintiff.

Shawn M. Perry, Perry & Perry, PLLP, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In this action, Plaintiff TJC's Transportation Solutions Ltd. ("TJC") has sued Defendant Rivard Companies, Inc. d/b/a Central Wood Products ("Rivard"), seeking payment for services rendered. After having been advised by counsel that the parties had reached a tentative settlement, the Court entered an Order dismissing this case on December 18, 2009. Soon thereafter, TJC filed a Motion for Relief from that Order and Rivard filed a Motion to Enforce the purported settlement between the parties. Both

Motions are now ripe for disposition. For the reasons set forth below, the Court will grant TJC's Motion and deny Rivard's Motion.[1]

## BACKGROUND

TJC provides shipping management services. (Compl. ¶ 5.) Between February and September 2008, TJC provided such services to Rivard. (Id. ¶ 8.) According to the Complaint, Rivard has failed to pay approximately $115,000 for those services. (Id. ¶ 14.) On October 8, 2009, TJC commenced this action against Rivard for breach of contract and *quantum meruit*.

On October 22, 2009, TJC's counsel e-mailed Rivard's counsel with a settlement offer. (Pl. Mem. Ex. A at 3.) Counsel thereafter exchanged several counter-offers. (Id. Exs. B-C.) On December 3, 2009, during the course of the parties' negotiations, Rivard's counsel asserted that Todd Murray, TJC's principal, had disclosed confidential information Rivard had provided during settlement discussions. (Id. Ex. E at 3-4.) In response, TJC's counsel averred that there had been no such disclosure and further informed Rivard's counsel of the existence of related litigation in Canada between TJC's sister company, Maddox Logistics ("Maddox"), and Jones Transportation ("Jones"). (Id. at 1.) In that litigation, Maddox claimed that Jones had reneged on an agreement after Rivard had disparaged Murray, TJC, and Maddox. TJC's counsel stated:

---

[1] Having concluded that oral argument would not materially assist the Court's resolution of the pending Motions, the hearing currently scheduled for April 1, 2010, is **CANCELED**.

> I think it would be wise for us to focus on resolving this matter, rather than focus on who is saying what to whom. . . . Please be aware that our initial draft complaint [in this action] included claims against Rivard . . . for Commercial Defamation, Tortious Interference with Contract, and violations of the Uniform Deceptive Trade Practices Act, arising out of [Rivard's disparaging statements.] We ultimately chose not to join these claims in this litigation in order to simplify the case and encourage settlement. Delving into issues of alleged defamation and business interference at this point is only likely to kill settlement talks and substantially expand the scope, costs, time, and demand in this litigation. I feel that our clients are best served if we *focus on settlement of the pending claims*.

(Id. (emphasis added).)

Another set of counter-offers followed the December 3 e-mail exchange. (Id. Ex. F at 12-15.) On December 11, 2009, Rivard's counsel e-mailed yet another revised counter-offer to TJC's counsel. (Id. at 12.) In that e-mail, Rivard's counsel stated:

> In addition to the provisions for payment via wire or certified funds, I think it goes without saying that we should also include *global* mutual releases, confidentiality and non-disparagement provisions in the settlement agreement and the provision of a stipulation of dismissal with prejudice to close the court file.

(Id. (emphasis added).) TJC's counsel responded a short time later, stating that as long as Rivard agreed to waive any claim for money it believed TJC owed it, "we have an agreement pursuant to the terms we previously discussed and the execution of a mutually approved settlement." (Id. at 10.) Rivard's counsel agreed to the waiver 19 minutes later and stated:

> I presume that your e-mail below acknowledges the other housekeeping items mentioned in my last e-mail, (i.e., mutual releases, non-disparagement, confidentiality and stipulation of dismissal with prejudice.) If so, we have a settlement, subject to drafting.

3

(Id.) Counsel for TJC responded, "I agree with everything in your e-mail." (Perry Decl. Ex. 1 at 1.)

On December 15, 2009, counsel for Rivard sent the Court a letter stating "that the parties have reached a tentative settlement in this case subject to the drafting of a settlement agreement and the filing of a stipulation of dismissal with prejudice." (Doc. No. 9.) The Court then entered an Order dismissing this case, reserving jurisdiction for 60 days to permit the parties time to finalize their settlement documents. (Doc. No. 10.)

Meanwhile, counsel for the parties exchanged several draft settlement agreements. (Pl. Mem. Ex. F at 7-9.) The terms of those drafts were materially identical, except for the language of the releases. TJC's draft contained language that would have released Rivard from "claims, damages, demands, and liabilities arising out of or related to the presently pending Lawsuit, styled *TJC's Transportation Solutions Ltd. v. Rivard Companies, Inc. d/b/a Central Wood Products,* Case No. 09-CV-02810 (D. Minn.)." (Perry Decl. Ex. 2 at 4.) Rivard's draft, by contrast, seized on the "global" release language set forth above and would have released Rivard from claims of any kind whatsoever, including claims that TJC could have brought against Rivard in connection with the Canadian litigation. (Id. Ex. 3 at 3.) After TJC's counsel rejected such a broad release, Rivard's counsel responded that the parties' (purported) agreement was intended to resolve any possible claim between them and buy "global peace." (Pl. Mem. Ex. F at 6-7.) TJC's counsel once again rejected this broad interpretation of the parties' purported agreement. (Id. at 6.) Counsel continued to exchange e-mails regarding their respective

4

positions, but they were unable to come to a final agreement due to their dispute over the scope of the releases. (Id. at 1-4.) The instant Motions followed.

## ANALYSIS

TJC moves to reopen this case under Federal Rule of Civil of Procedure 60, arguing that the parties were under a mistaken assumption that the matter had been settled when they contacted the Court. Under Rule 60(b)(1), the Court may grant relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." By contrast, Rivard argues that the parties entered into a valid settlement agreement that the Court should enforce. The Court enjoys the inherent power to enforce a negotiated settlement where it has reserved jurisdiction over the case in its order of dismissal (as it did here). See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380-81 (1994). Regardless of whether the Court's inherent power or its power under Rule 60 is involved, however, the parties' Motions turn on the existence of a valid and binding settlement agreement between them.

"A settlement agreement is essentially a contract, subject to contractual rules of interpretation and enforcement." Goddard, Inc. v. Henry's Foods, Inc., 291 F. Supp. 2d 1021, 1028 (D. Minn. 2003) (Erickson, M.J.) (citation omitted); accord Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194 (8th Cir. 1995) ("Settlement agreements are governed by basic principles of contract law."). The parties agree that this case is governed by Minnesota contract principles. Under Minnesota law, a settlement agreement requires a

5

meeting of the minds on all essential terms.  E.g., Ryan v. Ryan, 193 N.W.2d 295, 297 (Minn. 1971).

TJC argues that the parties did not agree to an essential term, namely, the scope of the mutual releases.  Rivard responds that the parties reached a final agreement on all material terms necessary to settle this case.  But assuming *arguendo* that Rivard is correct and a final agreement was in fact reached as to all essential terms, the Court would not enforce that agreement because it was rescinded shortly after its formation, without any prejudice to Rivard.

"It has been the law in Minnesota for more than 100 years that a unilateral mistake in making a contract is a valid basis for rescission if the mistaken party 'acts promptly and the contract can be rescinded without prejudice to the other party; that is, if both parties can be placed in statu quo.  This is on the ground that parties did not have the same subject-matter in mind in making the contract, and did not in fact come to an agreement in respect to the same thing.'"  Trs. of Minn. Cement Masons v. Letourneau & Sons, Inc., Civ. No. 07-3973, 2008 U.S. Dist. LEXIS 67262, at *7-8 (D. Minn. Sept. 2, 2008) (Kyle, J.) (quoting Olson v. Shepard, 206 N.W. 711, 712 (Minn. 1926), and citing Benson v. Maroke, 33 N.W. 38, 42 (Minn. 1887)); accord, e.g., Fenrick v. Olson, 131 N.W.2d 235, 240 (Minn. 1964) ("[E]ven in the absence of fraud[,] the unilateral mistake of a party to a contract may justify its rescission or cancellation where no prejudice other than the loss of the bargain will result to the other party thereto."); A.A. Metcalf Moving & Storage Co. v. N. St. Paul-Maplewood-Oakdale Sch., 587 N.W.2d 311, 318 (Minn. Ct.

App. 1998) ("[A] unilateral mistake in entering a contract is not a basis for rescission unless there is ambiguity, fraud, misrepresentation, *or where the contract may be rescinded without prejudice to the other party*.") (emphasis added) (citation omitted); Speckel by Speckel v. Perkins, 364 N.W.2d 890, 893 (Minn. Ct. App. 1985); see also Graf v. Sholes, No. C1-97-1893, 1998 WL 297519, at *2 (Minn. Ct. App. June 9, 1998) (Foley, J., dissenting). Assuming *arguendo* that a settlement agreement was reached through the e-mails recited above, the record establishes that such agreement was forged due to TJC's unilateral mistake. TJC clearly believed that the settlement would not release Rivard from claims that TJC could have brought against it in the Canadian litigation. Notably, when TJC's counsel mentioned those potential claims, he specifically advised Rivard's counsel that "[w]e ultimately chose not to join these claims in this litigation in order to simplify the case and encourage settlement. . . . I feel that our clients are better served if we *focus on settlement of the pending claims*." (Pl. Mem. Ex. E at 1 (emphasis added).) The mutual release clause in TJC's draft settlement agreement reiterates this point, as it clearly shows that TJC meant to release Rivard from claims relating to this litigation only and nothing else. (Perry Decl. Ex. 2 at 4.)

Moreover, TJC's counsel rejected Rivard's interpretation of the settlement agreement as soon as he realized how broadly Rivard viewed it. The Court perceives no prejudice suffered by Rivard in the short time between the formation of the alleged agreement and the abrogation thereof and, more importantly, Rivard has not identified any. TJC's unilateral mistake, plus the absence of prejudice to Rivard, equals a valid

7

basis to rescind the agreement, assuming one was reached.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiff's Motion for Relief from Order of Dismissal (Doc. No. 11) is **GRANTED,** Defendant's Motion to Enforce Settlement Agreement (Doc. No. 16) is **DENIED**, and the Clerk of the Court is **DIRECTED** to re-open this case. The hearing on the parties' Motions, currently scheduled for April 1, 2010, is **CANCELED**. The parties are **DIRECTED** to contact Magistrate Judge Boylan to schedule an initial pre-trial conference. The Court encourages the parties to continue to attempt to resolve this matter short of full-scale litigation.

Dated: March 25, 2010                                   s/Richard H. Kyle
                                                        RICHARD H. KYLE
                                                        United States District Judge